UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| BISMARK F. DINIUS,<br><br>　　　　　　Plaintiff,<br>　v.<br>RUSSELL L. PERDOCK, *et al.*,<br>　　　　　　Defendants.<br>_____/ | No. C 10-03498 MEJ<br><br>**ORDER RE DEFENDANTS' MOTIONS TO DISMISS; DEFENDANT PERDOCK'S MOTION TO STRIKE; AND DEFENDANT HOPKINS' MOTION TO STIRKE (Anti-SLAPP Motion)**<br><br>**[Docket Nos. 44, 46, 47, 50]** |

## I. INTRODUCTION

Pending before the Court are: (1) Defendant Charles Slabaugh's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. No. 44); (2) Defendant Russell Perdock's Motion to Strike Portions of Plaintiff's First Amended Complaint (Dkt. No. 46); (3) Defendant Perdock's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. No. 47); (4) Defendants County of Lake, Lake County Sheriff's Office, James Samples, Rodney Mitchell, Jon Hopkins, Dennis Ostini, James Bauman, Lloyd Wells, Wesley Frey, and Dean Pick's Motion to Dismiss (Dkt. No. 50); and (5) Defendant Hopkins' Motion to Strike Pursuant to California Code of Civil Procedure § 425.16 (Anti-SLAPP Motion) (Dkt. No. 50). The Court has thoroughly reviewed the operative First Amended Complaint, the parties' arguments, and relevant legal authority. On August 11, 2011, the Court held oral argument on the Motions. After carefully considering the parties' briefs and the argument presented at the hearing, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's § 1983 claim with leave to amend, but **DENIES** Defendants' Motions as to Plaintiff's state law claims **WITHOUT PREJUDICE**. The Court further **DENIES** Defendant Perdock's Motion to Strike. Finally, the Court **DENIES** Defendant Hopkins' Motion to Strike/Anti-SLAPP Motion **WITHOUT PREJUDICE.**

## II. BACKGROUND

On August 10, 2010, Plaintiff Bismarck Dinius initiated this action against Lake County and several law enforcement officials and County employees. Dkt. No. 1. On April 4, 2011, he filed his First Amended Complaint ("FAC"). Dkt. No. 43. His core allegations are as follows.

On April 29, 2006, Plaintiff was manning the tiller of a 27-foot sailboat owned and operated by Mark Weber on Clear Lake in Lake County, California. FAC ¶ 2. At about 9:10 p.m., the sailboat was returning to shore under lit full sail. *Id*. Mr. Weber's girlfriend, Lynn Thornton, was seated in the starboard rear quarter of the sailboat. *Id*. Defendant Russell Perdock was also on Clear Lake at that time, pleasure-boating in his 24-foot powerboat. *Id*. Plaintiff alleges that, traveling in the range of 40 to 60 m.p.h., Perdock's powerboat collided with the sailboat, killing Ms. Thornton. *Id*. According to Plaintiff, the ensuing investigation into the collision by Defendants was tainted by fabricated evidence, Defendants' failure to disclose exculpatory evidence, and a conspiracy among Defendants to frame Plaintiff for Ms. Thornton's death and protect Defendant Perdock, all of which led to criminal charges being filed against Plaintiff and Plaintiff ultimately being prosecuted for felony boating under the influence. FAC ¶¶ 1, 24-30, 32.

Based on these allegations, Plaintiff asserts claims for: (1) violation of his rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; (2) intentional infliction of emotional distress under California law against all Individual Defendants; and (3) malicious prosecution under California law against Defendants Perdock and Slabaugh.

Defendants now move to dismiss each of Plaintiff's claims and to strike certain portions of Plaintiff's First Amended Complaint.

## III. DISCUSSION

**A.  Perdock's Motion to Strike**

  1.  <u>Legal Standard</u>

Federal Rule of Civil Procedure ("Rule") 12(f) authorizes the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A matter is "immaterial" if it "has no essential or important relationship to the

claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).  A matter is "impertinent" if it consists of statements that do not pertain to and are not necessary to the issues in question.  *Id*.  A matter is "redundant" if it contains allegations that "constitute a needless repetition of other averments or are foreign to the issue." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005).  "Scandalous" matter includes allegations that cast a cruelly derogatory light on a party or other person.  *Wilkerson*, 229 F.R.D. at 170; William Schwarzer, *et al*., Federal Civil Procedure Before Trial § 9:388.

As the Ninth Circuit has explained, "[t]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy*, 984 F.2d at 1527).  Nevertheless, courts have recognized that "[m]otions to strike are generally disfavored because of the limited importance of pleadings in federal practice and because it is usually used as a delaying tactic." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005); *see also Sliger v. Prospect Mortgage, LLC*, 2011 WL 2118913, at *3 (E.D. Cal. May 27, 2011); William Schwarzer, *et al*., Federal Civil Procedure Before Trial § 9:375.  Thus, "granting a motion to strike may be proper if it will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues." *Sliger*, 2001 WL 2118913, at *3 (citing *Fantasy*, 984 F.2d at 1527-28).

When considering a motion to strike pursuant to Rule 12(f), the Court must view the pleading under attack in the light most favorable to the pleading party.  *See RDF Media Ltd.*, 372 F. Supp. 2d at 561; *Jones v. AIG Risk Mgmt, Inc.*, 2011 WL 1642499, at *3 (N.D. Cal. May 2, 2011).  The basis for striking allegations in a pleading must appear on the face of the pleading itself or from matters that the Court may judicially notice.  *See SEC v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995).

2. <u>Analysis</u>

In his Motion, Defendant Perdock moves to strike language from eight paragraphs in Plaintiff's First Amended Complaint.  Dkt. No. 46-1.  He explains that the language falls into three

3

categories: "(1) that Perdock's employment was terminated; (2) that Perdock gave false statements concerning his consumption of alcohol on the date of the accident; and (3) that the prosecuting authorities engaged in conduct to avoid Perdock's prosecution in this action." *Id*. at 9.  According to Perdock, "[a]ll of the . . . allegations are immaterial or impertinent to the three causes of action pled, are scandalous and alleged solely to improperly inflame and prejudice the trier of fact by diverting attention away from Plaintiff's culpability and toward Perdock's." *Id*. at 9-10.  Although Perdock groups the statements he seeks to strike and makes only generalized arguments in support, the Court must evaluate each of the statements individually.

> *a.  Statement One: In or about May 2010, Perdock was terminated as a LCSO employee.  FAC ¶ 7.*

Perdock urges the Court to strike this language because "there is nothing in the complaint to link Perdock's termination to the prosecution of Dinius."  Dkt. No. 46-1 at 10.  He contends that, "Plaintiff alleges no facts to indicate that Perdock was let go because he allegedly made false statements that led to Plaintiff's prosecution or unlawfully exercised authority over or interfered with the investigation." *Id*. at 10.  In response, Plaintiff argues that he has set forth allegations in his First Amended Complaint that Perdock's "malfeasance" caused Ms. Thorton's death and that Perdock was the highest ranking deputy in LCSO and remained on active duty throughout the criminal investigation and proceedings and improperly used his LCSO authority or influence to direct or manipulate LCSO's investigations of the boating collision.  Dkt. No. 51 at 4.  According to Plaintiff, these allegations refute any argument that Perdock's termination has no possible bearing on his claims. *Id*.  Plaintiff also asserts that he "intends to prove at trial that, after [his] criminal trial, that Perdock was eventually terminated because of his culpability for the death of Ms. Thornton." *Id*. at 5.  Finally, Plaintiff contends that the allegation regarding Perdock's termination should not be struck because "they legitimately contribute to a full understanding of the complaint as a whole and are historical in nature." *Id*. at 5.

The Court has carefully considered the parties' arguments and finds that Perdock has failed to show that the allegation regarding his termination is immaterial, impertinent, or scandalous.

4

1   Plaintiff has alleged that by virtue of his position as Chief Deputy Sheriff, Perdock exercised some

2   degree of influence and control over those involved in the investigation of the boating accident and

3   Plaintiff's subsequent prosecution. Thus, the allegation sets forth the date when Perdock's tenure as

4   Chief Deputy Sheriff ended. The allegation is therefore related to the allegations underlying

5   Plaintiff's § 1983 and malicious prosecution claims. Furthermore, the allegation merely sets forth an

6   objectively verifiable fact which aids in the understanding of the events at issue in this case and does

7   not cast a derogatory light on Perdock. The Court therefore **DENIES** Perdock's Motion to Strike

8   the allegation at page 4 lines 1-2 of the First Amended Complaint.

          *b.      Allegations Regarding Perdock's Statements About His Alcohol Consumption and Conduct by the Prosecuting Authorities*

11   Perdock moves to strike the following language from Plaintiff's First Amended Complaint:

> during that time, Perdock was overheard telling Mitchell that he had earlier in the evening been at Konocti Harbor Resort and Spa ("Konocti Resort") for a "soda" and, at the time of the Collision, was on way to Richmond Park for another "soda." Meanwhile, Sergeant Beland sought to administer a portable Preliminary Alcohol Screening ("PAS") device test, also sometimes known as a breath-analyzer or breathalyzer test, to Perdock who had remained on scene on shore for several hours. There and then, defendant Ostini ordered Sergeant Beland not to administer the PAS test to Perdock, and Sergeant Beland complied as ordered. No PAS test was administered to Perdock to ascertain alcohol intoxication. Defendants Mitchell, Perdock, Ostini, Bauman, Samples, Pick, Frey, and other presently unknown defendants aided, encouraged, induced, pressed, intimidated, threatened, or coerced Sergeant Beland, until his trial testimony, to conceal that he had been ordered by defendant Ostini to not administer the PAS test to Perdock.

19   FAC ¶ 24.

> In April 2006, defendant Perdock resided in Clearlake Park on the eastern shore of Clear Lake. According to his ex-wife's testimony at trial, Perdock left home about 7:00 - 7:15 p.m. on April 29, 2006, to go for a ride in his Powerboat. From April 29, 2006, through his testimony at the trial on August 11, 2009, defendant Perdock repeatedly publicly asserted that the only alcoholic beverage he had the day of the Collision was part of a beer mid-afternoon. Perdock's assertion was knowingly false, and defendants or some of them conspired with Perdock in efforts to fabricate evidence supportive of this falsehood, or in efforts to suppress or to fail to preserve material evidence tending to show that Perdock consumed alcoholic beverage(s) at Konocti Resort in the hours immediately prior to the Collision and/or tending to show he was under the influence of intoxicating liquor at the time of the Collision.

26   FAC ¶ 25.

> From April 29, 2006, through his testimony at Plaintiff's criminal trial, defendant Perdock repeatedly publicly asserted that, earlier the evening of the Collision, he had

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   never set foot at the Konocti Resort, a Clear Lake food and entertainment center with two onsite alcoholic beverage bars just north of Konocti Bay. Perdock's assertion was knowingly false, and defendants or some of them conspired with Perdock in efforts to fabricate evidence supportive of this falsehood, or in efforts to suppress or to fail to preserve material evidence tending to show that Perdock was in both bars at Konocti Resort and had consumed alcoholic beverage(s) there in the hours immediately prior to the Collision and/or tending to show he was under the influence of intoxicating liquor at the time of the Collision.

FAC ¶ 26.

Konocti Resort security guards, who knew defendant Perdock personally, observed him at one or more of the Konocti Resort bars in the evening hours before the Collision on April 29, 2006. Another disinterested third-party witness, John Jansen, who eventually testified at trial, also saw Perdock drink-in-hand that evening at one of the Konocti Resort bars, spoke with Perdock that evening there, and even raced his own powerboat against Perdock's earlier that evening before the Collision. Well after Dinius's Preliminary Hearing, his criminal trial counsel also first learned (1) that two uniformed LCSO deputies, whose identities are still unknown, walked through Konocti Resort roughly around midnight April 29, 2006, inquiring whether the security guards had seen defendant Perdock in the bars earlier that night and (2) that then and there the two LCSO deputies were told by more than one Konocti Resort security guard that Perdock was seen in one or more of the bars in the evening hours before the Collision. No LCSO investigative report was ever prepared and disclosed to Plaintiff's criminal trial counsel, revealing the foregoing material facts. However, Plaintiff is informed and believes, and thereon alleges that, within days after the Collision, it was common knowledge among some or all of defendants that Perdock was seen drinking at Konocti Resort in the evening hours of April 29, 2006, before the Collision. Because Perdock was speeding in his Powerboat and somewhat alcohol-impaired, he did not see the lit Sailboat until it was too late for him to avoid the Collision.

FAC ¶ 27.

From the outset of his investigation of the Collision through the rendering of his findings, conclusions, and recommendations, Slabaugh never seriously considered Perdock as a Collision crime suspect.

FAC ¶ 29.

Plaintiff is informed and believes that, in Sergeant Beland's case, his confidential expression to one or more fellow employees that he was upset that he had been ordered to not administer the PAS test to Perdock contributed to his being "hunted" down through harassing internal affairs investigations and to his LCSO employment termination after Plaintiff's Preliminary Hearing and before the criminal trial.

FAC ¶ 30.

…[a]nd/or inculpatory of Perdock's own criminal liability for the injury and death of Ms. Thornton, all in violation of at least Plaintiff's Fourteenth Amendment rights and in an effort to protect Perdock from prosecution.

UNITED STATES DISTRICT COURT
For the Northern District of California

FAC ¶ 32.

Rather than parsing out the foregoing allegations and specifically identifying the legal basis for striking them, Perdock argues that the allegations fall into two general categories, namely: (1) allegations that Perdock gave false statements concerning his consumption of alcohol on the date of the accident; and (2) allegations that the prosecuting authorities engaged in conduct to avoid Perdock's prosecution in this action. Dkt. #46-1 at 9. Perdock then argues generally that the allegations are immaterial or impertinent to the three claims Plaintiff has asserted and are scandalous.[1] *Id*. at 9-10.

With respect to the allegations concerning statements Perdock purportedly made about his intoxication, Perdock contends that any issues regarding his intoxication have no bearing on the boating under the influence claim for which Plaintiff was tried or whether Plaintiff failed to activate the navigation lights on the boat. Dkt. No. 46-1 at 10. Rather, he argues that, "[w]hether or not [he] also should have been prosecuted for the death of Ms. Thornton is immaterial to whether there was probable cause to charge Plaintiff for manslaughter." *Id*. He further argues that Plaintiff's allegations about his intoxication are not material to Plaintiff's claims "because Plaintiff must prove that Perdock's *statements* that prompted the County to prosecute were *intentionally* false, and not that his conduct in causing the accident was negligent, reckless or even criminal." *Id*. at 11 (emphasis in original).

Plaintiff, however, maintains that the majority of language in paragraphs 24-27, 28, and 30 are fact-specific allegations directly bearing on the alleged § 1983 liability of defendants, including Perdock.[2] Dkt. No. 51 at 5. With respect to the allegations concerning Perdock's statement to

---

[1] Perdock also contends that the allegations in question will "improperly inflame and prejudice the trier of fact by diverting attention away from Plaintiff's culpability and toward Perdock's." Dkt. No. 46-1 at 10. This argument, however, is unavailing. The pleadings are not given to the jury and Perdock will have the opportunity to object to any evidence he believes is irrelevant or otherwise subject to exclusion under the Federal Rules of Evidence should this case proceed to summary judgment or trial.

[2] Plaintiff repeatedly argues that many of the allegations Perdock now seeks to strike were previously alleged in his original Complaint. The Court is unpersuaded by this argument as a basis

7

1 Sheriff Mitchell, Plaintiff contends that the allegations bear on Sheriff Mitchell's knowing
2 participation in a conspiracy to cover up Perdock's responsibility for Ms. Thornton's death,
3 including suppressing material evidence that Perdock lied when denying he had been drinking prior
4 to the collision.

5 After reviewing the foregoing allegations and considering the parties' arguments, the Court
6 finds that Perdock has failed to sufficiently establish a basis to strike the allegations. In particular,
7 the allegations go to Plaintiff's claim that defendants conspired during the initial investigation of the
8 collision as to the evidence collected and used as part of Plaintiff's criminal prosecution, thereby
9 violating his rights under the Fourteenth Amendment. *See* FAC ¶ 32. Plaintiff's allegations
10 regarding Perdock's statements concerning his intoxication, as well as Plaintiff's allegations about
11 Perdock's conduct, go to key elements of Plaintiff's malicious prosecution claim. Thus, Perdock has
12 failed to demonstrate that the allegations about his purported statements and conduct are immaterial
13 or impertinent to Plaintiff's § 1983 and malicious prosecution claims or are scandalous.

14 As to Plaintiff's allegations that the other Defendants conspired or otherwise engaged in
15 conduct to protect Perdock from being prosecuted, Perdock has failed to demonstrate any basis to
16 justify striking such allegations. As Perdock recognizes, the thrust of Plaintiff's malicious
17 prosecution and § 1983 claims is that the collision was improperly investigated. *See* Dkt. No. 46-1
18 at 11. Plaintiff's allegations that Defendants collaborated to turn the investigation against him and
19 failed to follow up on facts or preserve evidence that may incriminate Perdock thus support those
20 claims. As such, they are directly related to Plaintiff's claims and the issues being litigated in this

---

for denying Perdock's Motion. Whether or not Perdock moved to strike the allegations that appeared in Plaintiff's initial Complaint, Plaintiff's Amended Complaint superceded that pleading and simultaneously re-set Perdock's opportunity to assert challenges the pleading under Rule 12, including moving to strike portions of it. Thus, Perdock is free to move to strike the language irrespective of whether it appeared in Plaintiff's initial pleading. At the same time, although Perdock's decision not to strike the language in the initial Complaint does not preclude him from bringing the instant 12(f) motion, it does factor into his prejudice argument. Specifically, to the extent Plaintiff previously made the allegations in his initial pleading, they are now part of the record in this case.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1 case. Moreover, although Perdock may vehemently oppose the substance of the allegations, this is
2 not sufficient to establish that they are scandalous.

3 In sum, the Court finds that Perdock has failed to establish any basis to strike the allegations
4 listed above pursuant to Rule 12(f). The Court therefore **DENIES** Perdock's Motion to Strike in its
5 entirety.

**B.     Motions to Dismiss Plaintiff's Claims Pursuant to Rule 12(b)(6)**

1.     Legal Standard

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557.) "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

9

### 2. 42 U.S.C. § 1983 Claim

In his First Amended Complaint, Plaintiff asserts a claim pursuant to § 1983. He alleges:

> Defendant Perdock and the other individual defendants, and each of them, conspired and/or knowingly aid-and-abetted one another, to cause and/or further Plaintiff's malicious prosecution or violation of his constitutional rights by, among other things, deliberating or recklessly fabricating facts or evidence, or failing to preserve material facts and evidence, and/or by hiding or manipulating material facts and evidence exculpatory to Plaintiff and/or inculpatory of Perdock's own criminal liability for the injury and death of Ms. Thornton, all in violation of at least Plaintiff's Fourteenth Amendment rights and in an effort to protect Perdock from prosecution. Such exculpatory and inculpatory evidence should have, but were not, preserved and/or disclosed to Plaintiff's criminal defense counsel at the proper times. Among other things and in an effort to understate his speed and to endeavor to conceal his self-compromised vision of the Sailboat ahead, Perdock repeatedly lied to investigators and other about his statements and recollections of his Powerboat speed at or about the time of the Collision. All the foregoing injured Plaintiff and violated his rights under at least the Fourteenth Amendment to the U.S. Constitution.

FAC ¶ 32.

In their respective Motions, Defendants raise various challenges to Plaintiff's § 1983 claim and urge the Court to dismiss the claim. Defendant Perdock contends that Plaintiff's § 1983 for malicious prosecution fails because under the Supreme Court's plurality opinion in *Albright v. Oliver*, 510 U.S. 266, 271 (1994), and the Ninth Circuit's decision in *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1069-70 (9th Cir. 2004), his alleged violation of substantive due process rights cannot support a § 1983 malicious prosecution claim. Dkt. No. 47-1 at 5-8. Defendant Perdock further argues that the § 1983 malicious prosecution claim is subject to dismissal because Plaintiff has failed to plead facts establishing that his prosecution was initiated without probable cause and that Perdock alleged wrongful conduct was instrumental to initiating the prosecution. *Id*. at 10-14.

Defendant Slabaugh also moves to dismiss Plaintiff's § 1983 malicious prosecution claim on the ground that it cannot be based on a violation of the Fourteenth Amendment. Dkt. No. 44-1 at 3-4. Slabaugh further contends that the federal malicious prosecution claim fails because Plaintiff has not alleged facts showing that Slabaugh commended or directed Plaintiff's prosecution, that the was prosecuted without probable cause, or that Slabaugh acted with malice. *Id*. at 5-6. Additionally, Slabaugh asserts that Plaintiff's § 1983 claim against him must be dismissed because he is entitled to qualified immunity. *Id*. at 7.

1    The Lake County Defendants assert that Plaintiff's § 1983 malicious prosecution claim fails
2 as a matter of law because Plaintiff has failed to allege that he was prosecuted for the specific
3 purpose of denying him equal protection or another specific constitutional right. Dkt. No. 50 at 5.
4 Additionally, Defendant Hopkins argues that he entitled to absolute prosecutorial immunity against
5 Plaintiff's § 1983 claim. *Id*. at 5-6.

6    Plaintiff, however, maintains that he has pled an actionable § 1983 claim premised on "at
7 least one and as many as eight" theories of liability. Dkt. No. 54 at 6. Particularly, Plaintiff
8 maintains that his § 1983 malicious prosecution claim squares with both the *Albight* and *Awabdy*
9 decisions and that Defendants have failed to demonstrate grounds for dismissal of his § 1983 claim
10 on any of the other theories of liability. He therefore asserts that Defendants' Motions should be
11 denied.

12    As the foregoing discussion illustrates, there is some disconnect between the parties
13 regarding the nature of Plaintiff's § 1983 claim(s). Defendants focus their argument exclusively on
14 Plaintiff's § 1983 malicious prosecution claim premised on a violation of his 14th Amendment
15 rights. Plaintiff, on the other hand, contends that not only has he pled an actionable § 1983
16 malicious prosecution claim based on violation of rights protected by the 14th Amendment, but he
17 has stated viable § 1983 claims based on direct violations of those 14th Amendment rights and based
18 on Defendants' conspiracy to violate those rights. As a result, Plaintiff's § 1983 claim – as fleshed
19 out in his Oppositions – is much broader than the single § 1983 claim pled in his First Amended
20 Complaint, which Defendants targeted in their 12(b)(6) Motions. Simply put, Defendants' Motions
21 no longer match the § 1983 claim that Plaintiff pled in his First Amended Complaint. Moreover, as
22 the parties' briefs highlight, case law from both the United States Supreme Court and the Ninth
23 Circuit with respect to a § 1983 malicious prosecution claim is ambiguous as to whether violations
24 of due process rights under the 14th Amendment are sufficient to sustain this type of claim. It is
25 therefore critical that before the Court rule on Defendants' challenges to Plaintiff's § 1983 claim,
26 Plaintiff clearly set forth each of the theories supporting that claim to give Defendants fair notice
27 under Rule 8 of the claims they are facing and to focus any 12(b)(6) challenges Defendants may
28

11

raise to those claims.

Accordingly, the Court **GRANTS** Defendants' Motions to Dismiss as to Plaintiff's § 1983 claim **WITH LEAVE TO AMEND**. In setting forth his § 1983 claim in his Second Amended Complaint, Plaintiff shall <u>separate the § 1983 claims based on each theory of liability</u> he seeks to proceed upon and shall <u>specifically identify the constitutional rights he is asserting were violated by Defendants</u>.[3] Further, to the extent that Plaintiff is asserting § 1983 claims based on a conspiracy theory, Plaintiff must set forth facts regarding each Defendant's conduct sufficient to satisfy *Twombly*'s plausibility standard.

### 3. Malicious Prosecution and Intentional Infliction of Emotional Distress Claims

Defendants have also each moved to dismiss Plaintiff's state law claims for malicious prosecution and intentional infliction of emotional distress ("IIED"). Because the Court's jurisdiction hinges on Plaintiff's federal claim, which the Court has dismissed, it declines to address Defendants' challenges to Plaintiff's California claims at this time. The Court therefore **DENIES** Defendants' Motions to Dismiss Plaintiff's malicious prosecution and IIED claims **WITHOUT PREJUDICE**.

### 4. Defendant Hopkins' Motion to Strike (Anti-SLAPP Motion)

Defendant Hopkins moves to strike Plaintiff's IIED claim pursuant to California Code of Civil Procedure § 425.16, California's Anti-SLAPP statute. Dkt. No. 50 at 7. Hopkins argues that his alleged activity underlying Plaintiff's IIED claim, namely, his issuance of a press release during Plaintiff's criminal trial, constitutes protected activity and is therefore protected under the statute. *Id*. at 9-11. He further argues that Plaintiff cannot demonstrate a probability of prevailing on the merits of the claim. *Id.* at 12-13. Accordingly, he argues that the claim is subject to dismissal.

---

[3] If – as this Court anticipates – another round of 12(b)(6) motions follows, the parties shall bear in mind the questions the Court provided to the parties in preparation for the August 11 hearing concerning federal decisions analyzing § 1983 malicious prosecution claims. *See* Dkt. No. 61. Like the parties, the Court has already invested substantial time researching this area and its primary concern is ensuring that its ruling regarding the § 1983 malicious prosecution claim is consistent with Supreme Court and 9th Circuit precedent, as murky as that may be.

In response, Plaintiff contends that Defendant Hopkins' conduct giving rise to the IIED claim goes beyond issuance of the press release, and includes allegations that Hopkins "conspired with, and aided and abetted, other defendants in an attempt to frame [Plaintiff] for a crime [Plaintiff] did not commit." Dkt. No. 54 at 16. Additionally, Plaintiff requests that the Court postpone ruling on Defendant Hopkins' Anti-SLAPP motion until the summary judgment stage. *Id*. at 21.

The Court has carefully considered the parties' arguments and finds that because the Court is granting Plaintiff leave to file a Second Amended Complaint, in which he may provide additional allegations regarding Defendants' conduct, particularly with respect to any conspiracy in which Hopkins and the other Defendants were purportedly involved, it is premature to address Defendant Hopkins' Anti-SLAPP motion at this time. However, Defendant Hopkins may reassert his Motion once Plaintiff's Second Amended Pleading is filed. Accordingly, the Court **DENIES** Defendant Hopkins' Motion to Strike **WITHOUT PREJUDICE**.

### IV.  CONCLUSION

For the reasons set forth above, the Court: (1) **GRANTS** Defendants' Motions to Dismiss (Dkt. Nos. 44, 47, 50) as to Plaintiff's § 1983 claim and all related conspiracy claims with **LEAVE TO AMEND**, but **DENIES** the Motions **WITHOUT PREJUDICE** in all other respects; (2) **DENIES** Defendant Perdock's Motion to Strike (Dkt. No. 47); and (3) **DENIES WITHOUT PREJUDICE** Defendant Hopkins' Motion to Strike (Anti-SLAPP Motion) (Dkt. No. 50).

Plaintiff shall have until **September 12, 2011**, to file his Second Amended Complaint.

**IT IS SO ORDERED.**

Dated: August 12, 2011

Maria-Elena James
Chief United States Magistrate Judge