UNITED STATES  DISTRICT COURT

Northern District of California

BISMARK F. DINIUS,

             Plaintiff,

    v.

RUSSELL L. PERDOCK, *et al.*,

             Defendants.

_____/

No. C 10-3498 MEJ

**ORDER ON DEFENDANTS'
MOTIONS RE: PLAINTIFF'S
SECOND AMENDED COMPLAINT
(DOCKET NOS. 67, 68, AND 74)**

## I.  INTRODUCTION

Plaintiff Bismark Dinius initiated this lawsuit in 2010 against Defendants Lake County and several County law enforcement officials and employees. Dkt. No. 1.  In a previous order, the Court summarized the core of Dinius's allegations against Defendants as follows:

> On April 29, 2006, Plaintiff was manning the tiller of a 27-foot sailboat owned and operated by Mark Weber on Clear Lake in Lake County, California.  At about 9:10 p.m., the sailboat was returning to shore under lit full sail.  Mr. Weber's girlfriend, Lynn Thornton, was seated in the starboard rear quarter of the sailboat.  Defendant Russell Perdock was also on Clear Lake at that time, pleasure-boating in his 24-foot powerboat.  Plaintiff alleges that, traveling in the range of 40 to 60 m.p.h., Perdock's powerboat collided with the sailboat, killing Ms. Thornton.  According to Plaintiff, the ensuing investigation into the collision by Defendants was tainted by fabricated evidence, Defendants' failure to disclose exculpatory evidence, and a conspiracy among Defendants to frame Plaintiff for Ms. Thornton's death and protect Defendant Perdock, all of which led to criminal charges being filed against Plaintiff and Plaintiff ultimately being prosecuted for felony boating under the influence.

Dkt. No. 63 at 2 (citations omitted).  Defendants filed several motions with respect to Dinius's complaint, including motions to dismiss and motions to strike.  Dkt. Nos. 44, 46, 47, and 50.  After reviewing the parties' arguments and holding a hearing, the Court issued an order that essentially permitted Dinius to amend his complaint so that his federal claims under 42 U.S.C. § 1983 would specifically plead each constitutional right that he alleged was violated by Defendants.[1]  Dkt. No. 63.

---

[1]  As part of this order, the Court also denied Perdock's motion to strike.  Dkt. No. 63.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    If Dinius amended his complaint, Defendants would be free to refile their motions and the Court

2    would then revisit the issues raised by the parties.

3           Dinius complied with the Court's instructions and filed a second amended complaint

4    ("SAC") that asserted the same core allegations as earlier and included the following specific claims

5    against various Defendants: (1) a Section 1983 *Brady* claim; (2) a Section 1983 *Devereaux* claim;

6    (3) a Section 1983 *Youngblood* claim; (4) a Section 1983 malicious prosecution claim; (5) a Section

7    1983 conspiracy claim; (6) a state law intentional infliction of emotional distress ("IIED") claim;

8    and (7) a state law malicious prosecution claim.  Defendants have filed motions to dismiss the SAC

9    and Defendant John Hopkins has also filed a motion to strike Dinius's IIED claim pursuant to

10   California Code of Civil Procedure § 425.16 (anti-SLAPP motion).  Dkt. Nos. 67, 68, and 74.

11   Having thoroughly reviewed the parties' arguments, the Court rules as follows.

## II.  LEGAL STANDARD

**A.  Motion to Dismiss**

14          A court may dismiss a complaint under Federal Rule of Civil Procedure (FRCP) 12(b)(6)

15   when it does not contain enough facts to state a claim for relief that is plausible on its face.  *See Bell*

16   *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

17   pleads factual content that allows the court to draw the reasonable inference that the defendant is

18   liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "The plausibility

19   standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

20   defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557).  "While a complaint

21   attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

22   obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

23   conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual

24   allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S.

25   at 555 (internal citations and parentheticals omitted).

26          In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as

27   true and construe them in the light most favorable to the plaintiff.  *See id*. at 550; *Erickson v.*

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   *Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir.

2   2007).  If the court dismisses the complaint, it should grant leave to amend even if no request to

3   amend is made "unless it determines that the pleading could not possibly be cured by the allegation

4   of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and*

5   *Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

6   **B.   Anti-SLAPP Motion**

7          California Code of Civil Procedure § 425.16 provides a procedure for a court "to dismiss at

8   an early stage nonmeritorious litigation meant to chill the valid exercise of the constitutional rights

9   of freedom of speech and petition in connection with a public issue." *Sipple v. Found. for Nat'l*

10  *Progress*, 71 Cal.App.4th 226, 235 (1999).  This type of nonmeritorious litigation is referred to

11  under the acronym "SLAPP," or Strategic Lawsuit Against Public Participation.  *Id.*  The archetypal

12  SLAPP complaint is a "generally meritless suit[ ] brought by large private interests to deter common

13  citizens from exercising their political or legal rights or to punish them for doing so." *Wilcox v. Sup.*

14  *Ct.*, 27 Cal.App.4th 809, 816 (1994) (disapproved on other grounds).  "California enacted section

15  425.16 to provide a procedural remedy to resolve such a suit expeditiously." *Dowling v.*

16  *Zimmerman*, 85 Cal.App.4th 1400, 1414 (2001) (internal quotation marks and citation omitted).

17         When a plaintiff brings a SLAPP complaint, the defendant may move to strike the complaint

18  under Section 425.16.  "Analysis of an anti-SLAPP motion to strike involves a two-step process."

19  *Kearney v. Foley & Lardner LLP*, 590 F.3d 638, 648 (9th Cir. 2009).  First, the defendant must

20  make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the

21  defendant's right of petition or free speech. *Braun v. Chronicle Publ'g Co.*, 52 Cal.App.4th 1036,

22  1042-43 (1997).  Second, "[i]f the court determines that the defendant has met this burden, it must

23  then determine whether the plaintiff has demonstrated a probability of prevailing on the merits."

24  *Kearney*, 590 F.3d at 648; *Damon v. Ocean Hills Journalism Club*, 85 Cal.App.4th 468, 474 (2000).

25  If the plaintiff is unable to provide the factual and legal support for the challenged cause of action,

26  the complaint should be stricken.  Cal. Code Civ. P. § 425.16(b); *Dowling*, 85 Cal.App.4th at 1417.

27  In reviewing a motion under Section 425.16, "the trial court is required to consider the pleadings and

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

the supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Church of Scientology v. Wollersheim*, 42 Cal.App.4th 628, 646 (1996) (disapproved on other grounds).

### III. DISCUSSION

The Court addresses the Defendants' motions in turn below.

**A. Lake County, Lake County Sheriff's Office (LCSO), and Employees' Motion to Dismiss**

1. Eleventh Amendment

The first issue raised by the County Defendants' motion is whether the Eleventh Amendment bars all federal claims against Defendants Rodney Mitchell (Sheriff of the LCSO) and Lake County. This is not a new dispute; it has been addressed by numerous courts within this Circuit with varying outcomes. The *Johnston v. County of Sonoma* court aptly summarized the issue as follows:

> Whether sheriffs are state or local officials for purposes of section 1983 suits challenging police practices is a somewhat open question. The answer to that question is important, because state actors acting in their official capacities are entitled to Eleventh Amendment immunity whereas actors for political subdivisions (like counties) are not. *See Pittman v. Oregon, Employment Dept.*, 509 F.3d 1065, 1071 (9th Cir. 2007). In one view, adopted by Judge Seeborg and others and based on *Venegas v. County of Los Angeles*, 32 Cal.4th 820, (2004), sheriffs are state actors entitled to Eleventh Amendment immunity at least where, as here, their activities relate to law enforcement duties within their jurisdictions. *Committee for Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma*, 2010 WL 2465030, at *3 (N.D. Cal. June 11, 2010). Other district courts continue to adhere to the Ninth Circuit's ruling in *Brewster v. Shasta County*, 275 F.3d 803, 812 (9th Cir. 2001), which held that sheriffs are not immune from section 1983 suits when engaged in law enforcement duties because even in that context they act as the final policymaker for a county. *See, e.g.*, *Fontana v. Alpine Cty.*, 2010 WL 3834823 (E.D. Cal. 2010) ("To the extent the conduct at issue in this case constitutes 'law enforcement' duties, the court is bound by Ninth Circuit precedent, specifically, *Brewster* . . . .").

2011 WL 855934, at *2 (N.D. Cal. Mar. 9, 2011) (full citations omitted). The *Johnston* Court went on to find that in its view, "Judge Seeborg has the more sensible position not because the *Venegas* case is binding but because it represents the correct statement of the function of California sheriffs." *Id.* But, as *Johnston* noted, other courts continue to uphold the Ninth Circuit's decision from *Brewster. See e.g.*, *Armstrong v. Siskiyou Cnty. Sheriff's Dep't*, 2008 WL 686888, at *7-8 (E.D. Cal. Mar. 13, 2008) ("Although the Ninth Circuit has not revisited this matter since *Venegas*, it is clear that federal claims must be ruled by federal law"); *Shoval v. Sobzak*, 2009 WL 2780155, at *3

4

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  (S.D. Cal. Aug. 31, 2009) (acknowledging *Venegas* but holding that "until the Ninth Circuit

2  addresses the issue and abrogates *Brewster*, this Court is bound by Ninth Circuit precedent"); *Pruitt*

3  *v. Cnty. of Sacramento*, 2010 WL 3717302, at *1-2 (E.D. Cal. Sept. 15, 2010) (same); *see also Smith*

4  *v. Cnty. of Los Angeles*, 535 F.Supp.2d 1033, 1035-38 (C.D. Cal. Feb. 7, 2008) (holding that

5  *Venegas* misapplied federal law and urging the California Supreme Court to reconsider its decision).

6      The above cases show that there is a conflict whether California Supreme Court's decision in

7  *Venegas* or the Ninth Circuit's decision in *Brewster* applies to this issue. The County Defendants,

8  however, ignore these conflicting decisions in their moving papers and instead simply urge the Court

9  to adopt the reasoning from *Venegas.* Dkt. No. 74 at 5-6. In his opposition, Dinius points out that

10  whether the Sheriff was acting for the State or the County "depends on an analysis of the precise

11  function at issue." Dkt. No. 76 at 5 (quoting *Brewster*, 275 F.3d at 806). The County Defendants do

12  not dispute this in their reply and acknowledge that "a court reviewing a claim of Eleventh

13  Amendment immunity must independently evaluate each discrete scenario presented to it to

14  determine whether the immunity is available to the Sheriff claiming it." Dkt. No. 77 at 2. The Court

15  agrees that a proper analysis of this question would require it to evaluate the Sheriff's specific

16  functions in this particular case. Since the County Defendant's moving papers did not include a

17  specific analysis of the Sheriff's functions which are at issue in this case — and instead essentially

18  argued that the Court should follow the ruling from *Venegas* — the Court declines to grant their

19  motion to dismiss, particularly because there are conflicting decisions on whether *Venegas* or

20  *Brewster* is the controlling law in the Ninth Circuit. Accordingly, the motion to dismiss is DENIED

21  on this ground, and Dinius's claims against Sheriff Mitchell and Lake County may move forward.

22      2. <u>Prosecutorial Immunity</u>

23      Next, Defendant John Hopkins (Lake County's former District Attorney who prosecuted

24  Dinius in the underlying criminal matter) argues that he is entitled to absolute prosecutorial

25  immunity for all claims against him. Dinius concedes that Hopkins is entitled to absolute immunity

26  for any conduct that was "intimately associated with the judicial phase of the criminal process."

27  Dkt. No. 76 at 6 (citing *Imbler v.Pachtman*, 424 U.S. 409, 430 (1976)). But, as Dinius correctly

28

points out, when prosecutors act as investigators, they do not have absolute immunity. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) ("The Court made clear that absolute immunity may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks"); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273-74 (1993) (explaining that when "a prosecutor performs the investigative functions normally performed by a detective or police officer," he is only entitled to qualified immunity rather than absolute immunity).

The issue is therefore whether Dinius has alleged that Hopkins acted improperly in his role as an officer of the court or while performing investigative functions. Hopkins argues that he is entitled to absolute immunity because Dinius's SAC never alleges that he was personally involved in the underlying investigation. The SAC, however, asserts the following: "Under a non-binding agreement that LCSO could call on LCDAO[2] for critical incident investigations help, defendant Mitchell immediately asked for investigative assistance from LCDAO after the Collision. The morning following the Collision at least one LCDAO investigator met with defendant Ostini at the LCSO marina facility to inspect and to discuss the two impounded boats involved in the Collision." SAC ¶ 29. Even though Dinius does not specifically identify Hopkins as the prosecutor in charge of the investigation, the Court must construe all allegations in a light most favorable to Dinius at this stage of the proceedings. *See Twombly*, 550 U.S. at 550. Because Hopkins was in charge of the Lake County District Attorneys' Office at the time of the investigation, the Court finds that Dinius's SAC sufficiently alleges that he is complaining about Hopkins' investigatory conduct. This is actionable and the motion to dismiss on this ground is DENIED.

3. <u>Section 1983 *Brady* Claim</u>

Dinius's first Section 1983 claim alleges that each of the Defendants violated his constitutional rights under *Brady* by failing to disclose exculpatory evidence. The elements of a valid *Brady* claim are: (1) the prosecution must suppress or withhold evidence, (2) which is

---

[2] The LCDAO is the Lake County District Attorneys' Office.

6

UNITED STATES DISTRICT COURT
For the Northern District of California

favorable, and (3) material to the defense. *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972).  The County Defendants argue that Dinius cannot establish any of these elements.  The Court, however, limits its analysis to only the third prong of materiality because it is dispositive to this entire issue.

According to the County Defendants, the test for materiality is "whether it is reasonably likely that the evidence would have affected the outcome of trial, or, in other words, whether the jury would have reached a different verdict more favorable to the defendant if the evidence in question had not been suppressed."  Dkt. No. 74 at 8 (citing *Giglio v. United States*, 405 U.S. 150 (1971)).  Because Dinius was eventually acquitted at trial, the County Defendants argue that he cannot establish that any withheld evidence was material.  Dinius, on the other hand, contends that the "test of *Brady* materiality is 'whether prejudice must have ensued.'"  Dkt. No. 76 at 8 (quoting *Strickler v. Greene*, 527 U.S. 263 (1999)).  Dinius explains that there is a *Brady* violation "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the *proceeding* would have been different."  *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  Thus, the issue before the Court is whether an individual who was acquitted at trial — like Dinius — may pursue a Section 1983 claim under *Brady*.

This exact question was recently addressed for the first time by the Ninth Circuit.  A split panel initially agreed with the County Defendants' position, but that opinion was withdrawn and superseded.  *See Smith v. Almada*, 623 F.3d 1078 (9th Cir. 2010), *withdrawn and superseded by* 640 F.3d 931 (9th Cir. 2011).  In the superseding opinion, the *Almada* Court declined to reach a decision on the issue.  640 F.3d at 940-41.  Nonetheless, each of the judges provided their view.  Judge Gwin explained in detail why a criminal defendant who is ultimately acquitted should not be able to pursue a *Brady* claim.  *Id.* at 941-45 ("In sum, allowing *Brady*-based § 1983 claims without a conviction is not compelled by our circuit's case law, conflicts with other circuits' case law and the central

purpose of *Brady*, would render *Brady*'s materiality standard significantly less workable, and lacks a limiting principle.").  Judge Gould, in his own concurrence, provided that he was personally inclined to follow Judge Gwin and other Circuits that had addressed this particular question, but, at the

7

1    request of his colleagues, would not rule on the issue because it was not necessary for the purposes

2    of the decision in *Almada*. *Id.* at 940-41. Lastly, Judge Nelson dissented and strongly disagreed

3    with Judge Gwin's position that a conviction should be a prerequisite to a *Brady* claim under Section

4    1983. *Id.* at 945-48.

5           After *Almada*, the Ninth Circuit issued an unpublished decision that addressed the same

6    topic.[3]  In *Puccetti v. Spencer*, the Ninth Circuit adopted the position of Judge Gwin and Judge

7    Gould and found as follows:

8           The district court correctly reasoned that because the plaintiffs' criminal charges were
            dismissed, the plaintiffs cannot show that any suppressed evidence could have
9           produced a different result at trial. *See Smith*, 640 F.3d at 939.  Our sister circuits
            have adopted identical reasoning in denying *Brady* claims when the plaintiff was
10          never convicted. *See Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir.1999); *Flores
            v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998); *McCune v. City of Grand Rapids*, 842
11          F.2d 903, 907 (6th Cir. 1988).  We find this reasoning persuasive and affirm the
            district court's dismissal of plaintiffs' *Brady* claim.

12

13   2011 WL 6292200, at *1 (9th Cir. Dec. 16, 2011).  Because the Court is mandated to apply Ninth

14   Circuit law to this case, and it appears that this Circuit will likely find that a conviction is necessary

15   for an individual to have a viable *Brady* claim — similar to every other Circuit that has examined

16   the this question — this Court finds in favor of the County Defendants on this particular issue.

17   Accordingly, Dinius's first Section 1983 claim under *Brady* is DISMISSED WITH PREJUDICE

18   since he was acquitted in the underlying criminal matter.[4]

19   _____

20          [3]  Pursuant to Federal Rules of Appellate Procedure 32.1 and 36-3, unpublished decisions

21   issued by the Ninth Circuit after January 1, 2007 may be cited even though they are not precedent.

22          [4]  The district court in *Gutierrez v. Solano* also addressed this issue after *Puccetti* and

23   *Almada*.  2012 WL 123540, at *5 (C.D. Cal. Jan. 17, 2012).  *Gutierrez* found Judge Nelson's
     dissenting opinion in *Almada* persuasive and held that the plaintiff could pursue his Section 1983
24   *Brady* claim even though he had not been convicted. *Id.* at *5-6.  The Court agrees with some of the
     rationale from *Gutierrez,* including that "criminal trial proceedings often entail similar liberty
25   deprivations [to convictions], from loss of one's employment, good name, and life savings, to
     continued custody during trial." *Id.* at *6.  Nonetheless, this Court is cognizant that it should not
26   create new remedies under federal law; rather, it should enforce the law of the Ninth Circuit, which
     appears to be inclined to dismiss any *Brady* claims from defendants who were previously acquitted.
27   It is up to the Ninth Circuit, and not this Court, to expand the protections of *Brady* if the Circuit

28

                                                    8

UNITED STATES DISTRICT COURT
For the Northern District of California

4.  <u>Section 1983 *Devereaux* Claim</u>

In his second claim, Dinius alleges that certain Defendants violated his constitutional right to be free from criminal charges on the basis of deliberately fabricated evidence by the government. As explained in *Devereaux v. Abby*, Dinius can recover under Section 1983 for this constitutional violation if he establishes at least one of the following: "(1) Defendants continued their investigation of [him] despite the fact that they knew or should have know that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information."  263 F.3d 1070, 1076 (9th Cir. 2001). Defendants Dennis Ostini (supervisor of the LCSO's marine patrol) and Hopkins move to dismiss this claim, arguing that Dinius failed to plead sufficient facts to establish a cognizable *Devereaux* violation.

The Court disagrees with Hopkins and Ostini's position.  Hopkins is alleged to have been involved in the investigation of the accident, permitting him to learn that Dinius was merely a guest on the sailboat, that two neutral onshore witnesses observed that the sailboat's navigation lights were lit at the time of the accident, and that Perdock — who had been drinking — was navigating his powerboat at a reckless speed when it collided with the sailboat.  SAC ¶¶ 22, 24, 28, and 29. Ostini, who was the LCSO Sergeant in charge of the accident investigation, is also alleged to have known some of this information.  SAC ¶¶ 12, 13, 22, and 23.  Based on these claims, Dinius has sufficiently alleged that Hopkins and Ostini knew that he was innocent and yet continued their investigation.  Hopkins and Ostini's arguments to the contrary, which go to the merits of Dinius's claim, are misplaced for a motion to dismiss.  Moreover, Ostini is alleged to have purposely promoted that Dinius himself did not see that the sailboat's navigation lights were lit, which was misleading because it was impossible for Dinius to have been able to see the navigation lights from inside the sailboat.  SAC ¶ 37.  This allegation meets the second prong of a *Devereaux* claim since Ostini's unsophisticated investigation techniques may be considered to have been so coercive and

believes it is warranted.

9

UNITED STATES DISTRICT COURT
For the Northern District of California

1    abusive that he should have known that they may yield false information.[5] Thus, Hopkins and

2    Ostini's motions to dismiss the *Devereaux* claim are DENIED.

3        5. <u>Section 1983 *Youngblood* Claim</u>

4        Dinius's third claim asserts that certain Defendants, including Lake County and Ostini,

5    violated his due process rights to governmental preservation of evidence potentially useful to the

6    accused, as that specific constitutional right is outlined in cases such as *Arizona v. Youngblood*, 488

7    U.S. 51 (1988). The parameters of a *Youngblood* claim under Section 1983 were explained by the

8    *United States v. Estrada* court as follows:

9        In *California v. Trombetta*, 467 U.S. 479, 489 (1984), the Supreme Court held that
10        for destruction or loss of evidence to constitute a constitutional violation, "[the]
         evidence must both possess an exculpatory value that was apparent before the
         evidence was destroyed, and be of such a nature that the defendant would be unable
11        to obtain comparable evidence by other reasonably available means." In *Arizona v.*
         *Youngblood,* 488 U.S. 51, 58 (1988), the Court further held that where lost or
12        destroyed evidence is deemed to be only potentially exculpatory, as opposed to
         apparently exculpatory, the defendant must show that the evidence was destroyed in
13        bad faith.

14    453 F.3d 1208, 1212 (9th Cir. 2006). Pursuant to the elements outlined in these cases, Dinius

15    alleges that after the accident, a LCSO Sergeant attempted to administer a portable Preliminary

16    Alcohol Screening test (i.e., breathalyzer) on Perdock to determine his level of intoxication. SAC ¶

17    24. The test, however, was never conducted because Perdock refused to take it and Ostini ordered

18    the LCSO Sergeant to not administer it. *Id.* Dinius claims that the breathalyzer test would have led

19    to exculpatory evidence — that Perdock was intoxicated at the time of the accident — which could

20    not have been obtained in other ways and was not preserved in bad faith. SAC ¶ 41.

21        One of the arguments raised by each of the Defendants against Dinius's claim is that the

22    government is not constitutionally required under *Youngblood* to conduct criminal investigations in

23    a certain manner or to perform a particular test. The United States Supreme Court discussed this in

24

25        [5] Ostini also argues that he is immune from any liability based on his testimony at the
26    preliminary hearing. Dinius's allegations, however, encompass more than just Ostini's testimony at
     a judicial proceeding. *See* SAC ¶ 37 ("Defendant Ostini *purposely reported and promoted*, and
27    testified at the Preliminary Hearing to, the highly deceptive/false misinformation that Dinius did not
     see the Sailboat's navigation lights on before or at the time of Collision . . . .") (emphasis added).
28

1    *Youngblood*, noting:

2        If the court meant by this statement that the Due Process Clause is violated when the
         police fail to use a particular investigatory tool, we strongly disagree. The situation
3        here is no different than a prosecution for drunken driving that rests on police
         observation alone; the defendant is free to argue to the finder of fact that a
4        breathalyzer test might have been exculpatory, but the police do not have a
         constitutional duty to perform any particular tests.

5

6    488 U.S. at 58-59.  Dinius's opposition to the County Defendants' motion does not directly respond

7    to this argument.  Dinius, however, does address this issue in his opposition to Perdock's motion to

8    dismiss.  There, he concedes that he is not contending that "there is a constitutional right requiring

9    law enforcement to conduct certain types of tests over others." Dkt. No. 69 at 14.  Dinius goes on to

10   explain that he still has a viable *Youngblood* claim because although the LCSO was not required to

11   administer a breathalyzer test on Perdock, since the test was initiated and then purposely thwarted by

12   Perdock and Ostini, his constitutional right against the preservation of evidence was violated.  *Id*.

13        The Court disagrees.  Dinius's *Youngblood* rights protect him from the situation where the

14   government obtains evidence and then fails to preserve it even though its exculpatory value was

15   apparent.  Here, while evidence of Perdock's intoxication was available if a prompt breathalyzer test

16   was administered, this evidence was never actually obtained.  Without such evidence, the

17   prerequisite of a *Youngblood* claim is missing since Lake County and Ostini could not destroy or fail

18   to preserve evidence that had not yet come into existence.[6]  Accordingly, Dinius's attempt to

19   pigeonhole Lake County and Ostini's conduct into a *Youngblood* claim fails as a matter of law.

20   These allegations may help Dinius establish his other claims — such as a conspiracy on the part of

21   Defendants to blame him for the accident — but they do not amount to a *Youngblood* violation.  His

22   claim is therefore DISMISSED WITH PREJUDICE.

23        6.  Section 1983 Malicious Prosecution Claim

24        With respect to Dinius's fourth claim for malicious prosecution under Section 1983, the

25   County Defendants argue that the claim is invalid for several reasons, including that Dinius cannot

26   _____

27        [6]  As in *Youngblood*, Dinius is still free to argue that Perdock was intoxicated at the time of
28   the accident and use his refusal to take the breathalyzer test for evidentiary support.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

establish that he was prosecuted without probable cause.  The Court does not address these arguments because, as explained in section III(C)(4) of this order, the claim fails for other reasons and is therefore DISMISSED.

### 7. Section 1983 Conspiracy Claim

In his fifth claim, Dinius asserts that Defendants are liable for conspiracy under Section 1983.  In their motion to dismiss, the County Defendants fail to analyze this claim and instead argue that Dinius's Section 1985 claim should be dismissed.  Because Dinius has not pled a Section 1985 claim, this argument is misplaced and the County Defendants' motion to dismiss the claim is DENIED.[7]

### 8. IIED Claim

Dinius's sixth claim for IIED asserts that he suffered emotional distress due to the outrageous conduct exhibited by each of the individual Defendants.  To plead a cognizable claim for IIED, a plaintiff must allege (1) outrageous conduct by the defendant; (2) an intention by the defendant to cause, or reckless disregard of the probability of causing, emotional distress; (3) severe emotional distress; and (4) an actual and proximate causal link between the tortious conduct and the emotional distress.  *Nally v. Grace Cnty. Church of the Valley*, 47 Cal.3d 278, 301 (1988).

The County Defendants argue that they cannot be liable for this state law tort under the immunity provisions of California Government Code §§ 815.2 and 821.6.[8]  "Pursuant to these

---

[7]  Nonetheless, as the Court explains when analyzing Perdock's motion to dismiss, Dinius's Section 1983 conspiracy claim is only actionable with respect to his *Devereaux* claim since it is the only Section 1983 claim that is not being dismissed.  Thus, Dinius has adequately pled a conspiracy claim predicated on only his *Devereaux* claim against Ostini and Hopkins.

[8]  Section 815.2 provides that "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative [;] (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."  Section 821.6 provides that a "public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    sections, public employees, acting within the scope of their employment, and the public entity, are

2    immune from tort liability for any acts done by the employees in preparation for formal judicial or

3    administrative proceedings, including investigation of alleged wrongdoing, and for any acts done to

4    institute and prosecute such formal proceedings." *Hansen v. Cal. Dept. of Corrs. & Rehab.*, 171

5    Cal.App.4th 1537, 1547 (2008).[9]  Dinius first points out that he is only asserting an IIED claim

6    against the individual County Defendants and not Lake County.  Accordingly, Section 815.2 does

7    not apply here.  As for Section 821.6, Dinius argues that this immunity only provides a defense

8    against malicious prosecution claims.  The California Supreme Court corroborated this position in

9    *Sullivan v. County of Los Angeles* when it held that "the history of section 821.6 demonstrates that

10   the Legislature intended the section to protect public employees from liability only for *malicious*

11   *prosecution . . . .*" 12 Cal.3d 710, 719 (1984).  This holding, however, has been distinguished by

12   numerous California Court of Appeal decisions which find that Section 821.6 applies to claims other

13   than malicious prosecution, including IIED claims.  *See, e.g.*, *Randle v. City and Cnty. of San*

14   *Francisco*, 186 Cal.App.3d 449, 456 (1986); *Javor v. Taggart*, 98 Cal.App.4th 795, 808-09 (2002).

15          The Court agrees with the California Supreme Court's decision in *Sullivan* and finds that

16   Section 821.6 only applies to claims for malicious prosecution.  A recent law review article has

17   examined the inconsistent positions taken by California courts on this issue and explained why the

18   better approach — which this Court adopts — is to interpret Section 821.6 as only immunizing

19   public employees' conduct with respect to claims stemming from the institution or prosecution of a

20   judicial proceeding.  *See* Frank J. Menetrez, *Lawless Law Enforcement: The Judicial Invention of*

21   *Absolute Immunity for Police and Prosecutors in California*, 49 Santa Clara L. Rev. 393 (2009)

22   (summarizing the case law with respect to Section 821.6 and explaining how the immunity should be

23   applied in the future).  As explained in the article, interpreting Section 821.6 to apply to all tort

24   claims would create "a regime of lawless law enforcement in California" by giving the "state's law

25

26   _____

27          [9] Section 821.6 "applies to police officers as well as public prosecutors since both are public
     employees within the meaning of the Government Code." *Randle v. City and Cnty. of San*
28   *Francisco*, 186 Cal.App.3d 449, 455 (1986).

UNITED STATES DISTRICT COURT
For the Northern District of California

1    enforcement authorities a license to kill or to do any other damage that strikes their fancy, even

2    maliciously and without probable cause, as long as they do it in the course of investigating crime."

3    *Id.* at 426; *see also id.* at 424 ("Thus, here again the judgment of the California legislature seems to

4    have been more sensible than that of the Court of Appeal: . . . law enforcement personnel generally,

5    should vigorously pursue their occupations, but they must exercise reasonable care when they do so

6    or else face liability for any harm they cause."). For these reasons, the Court is not persuaded by the

7    County Defendants' argument and follows *Sullivan* to find that Section 821.6 does not automatically

8    immunize County Defendants' investigatory conduct against Dinius's IIED claim.[10]

9         County Defendants next argue that they cannot be liable for IIED because their alleged

10   wrongful conduct was not directed specifically at Dinius. According to the County Defendants, the

11   SAC only alleges that Perdock made false statements to the government for his own self-

12   preservation and the "investigation and prosecution that followed, however flawed or deficient

13   Plaintiff may believe them to be, were simply natural consequences of the Collision." Dkt. No. 74 at

14   17. This argument ignores that Dinius's IIED claim incorporates all of his allegations under federal

15   law (i.e., conspiracy, corruption, fabrication of false evidence), which point to at least a reckless

16   disregard on the part of the County Defendants to cause Dinius to suffer emotional distress.[11]

17        Lastly, the County Defendants contend that Dinius's IIED claim should be dismissed

18   ───────────────

19        [10] This result does not mean that future plaintiffs may plead around Section 821.6 immunity
20   by simply alleging claims other than malicious prosecution. "If it did, then the immunity would
     indeed provide little meaningful protection, because plaintiffs would always be able to recast their
21   complaints in terms of defamation, [IIED], interference with business relations, or the like."
     Menetrez, 49 Santa Clara L. Rev. at 419. But this would not be possible since malicious prosecution
22   is "the only tort action that can be based on the institution or prosecution of a judicial or
     administrative proceeding." *Id.* Moreover, under this proposed framework for interpreting the
23   immunity, potential plaintiffs would still have recourse for any harm caused independently of any
24   decision to prosecute. *Id.* at 425. That is the case here since Dinius alleges in his second claim that
     the County Defendants caused him severe emotional distress based on his *Devereaux* claim that they
25   fabricated evidence (and not based on the fact they instituted judicial proceedings against him).

26        [11] The County Defendants' argument that Dinius's IIED claim fails because it is based on
27   the same facts as his other claims does not warrant discussion since the Court has not dismissed
     some of those claims against some of the County Defendants.
28

UNITED STATES DISTRICT COURT
For the Northern District of California

because he failed to comply with the provisions of the Government Tort Claims Act (GTCA),

codified under California Government Code §§ 900 *et. seq.* *See Wood v. Riverside Gen. Hosp.*, 25

Cal.App.4th 1113, 1119 (1994) ("The timely filing of a claim [under the GTCA] is an essential

element of a cause of action against a public entity and failure to allege compliance with the claims

statute renders the complaint subject to general demurrer"). Dinius, however, has alleged that he has

complied with the GTCA and that is sufficient at this stage of the proceedings. SAC ¶ 21. For the

foregoing reasons, the County Defendants' motion to dismiss Dinius's IIED claim is DENIED.

**B. Lake County, LCSO, and Employees' Anti-SLAPP Motion**

The anti-SLAPP motion only challenges Dinius's IIED claim against Defendant Hopkins.

As explained earlier, the legal standard for such a motion requires the Court, as part of the second

step of its analysis, to determine whether Dinius has demonstrated a probability of prevailing on the

merits of his IIED claim against Hopkins. *See Kearney*, 590 F.3d at 648. In contending that Dinius

cannot prevail on such a claim, Hopkins bases his argument on the assumption that he is only

alleged to have caused Dinius emotional distress stemming from a press release that Hopkins issued

during jury selection in the underlying criminal trial. Dkt. No. 74 at 18 ("Plaintiff alleges a claim for

intentional infliction of emotional distress against Hopkins based on Hopkins's issuance of a 'July

17, 2009 press release' . . . "). But, as the Court explained earlier and Dinius points out in his

opposition, the IIED claim against Hopkins is based on all of his unlawful conduct, including other

allegations besides the press release such as the fact that Hopkins was personally involved in the

investigation of Dinius and is therefore not immune from liability with respect to Dinius's

*Devereaux* claims. In other words, Hopkins may be liable for IIED if his alleged conduct outlined in

the Section 1983 *Devereaux* claim proximately caused Dinius's severe emotional distress.

Hopkins's arguments in the anti-SLAPP motion are therefore misplaced and the motion is DENIED.

**C. Perdock's Motion to Dismiss**

Perdock (former Lake County Chief Deputy Sheriff who was driving the powerboat involved

in the accident) moves to dismiss each of Dinius's seven claims against him. Before discussing each

of these claims in detail, the Court notes that Perdock's main argument — that Dinius's entire

15

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    Section 1983 claim must be dismissed because such claims cannot be based on the Fourteenth

2    Amendment's substantive due process clause — is erroneous.  With this argument, Perdock is

3    conflating case law regarding malicious prosecution claims under Section 1983 with case law

4    regarding Section 1983 claims based on other federal rights.  Essentially, a Section 1983 claim only

5    imposes two proof requirements on a plaintiff: "(1) that a person acting under color of state law

6    committed the conduct at issue, and (2) that the conduct deprived the claimant of some right,

7    privilege, or immunity protected by the Constitution or laws of the United States."  *Leer v. Murphy*,

8    844 F.2d 628, 632-33 (9th Cir. 1988).  In the Ninth Circuit, a plaintiff is permitted to bring Section

9    1983 claims in the same action based on both malicious prosecution as well as any other federal

10   rights that were allegedly violated.  *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1072 (9th Cir. 2004)

11   ("In this circuit, nothing prevents [the plaintiff] from bringing *both* malicious prosecution and direct

12   First and Fourteenth Amendment claims in the same § 1983 action.").  Accordingly, the Court

13   examines each of Dinius's Section 1983 claims as stand-alone claims.  And, as explained in further

14   detail below, the argument that none of these Section 1983 claims may be based on the substantive

15   due process clause does not apply universally and must be addressed separately for each claim.

16          1.  Section 1983 *Brady* Claim

17          As explained in section III(A)(3) of this order, Dinius cannot state a *Brady* claim under

18   Section 1983 because he was never convicted in the underlying criminal matter.  This claim is

19   therefore DISMISSED WITH PREJUDICE.

20          2.  Section 1983 *Devereaux* Claim

21          Perdock's sole basis in moving to dismiss Dinius's second claim is that Section 1983 liability

22   cannot attach to violations of substantive due process rights.  *See* Dkt. No. 68-1 at 16 ("Thus,

23   plaintiff has not alleged any procedural due-process violation arising out of the allegedly fabricated

24   and false evidence.  At most this is an allegation of a *substantive*-due-process violation, for which no

25   § 1983 liability for malicious prosecution attaches.").  This misplaced argument again shows that

26   Perdock ignores the fact that Dinius is alleging both a stand-alone Section 1983 *Devereaux* claim in

27   addition to a Section 1983 malicious prosecution claim.  While, as explained in the next section,

28

16

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    there is case law that supports Perdock's argument that any Section 1983 malicious prosecution

2    claim cannot be based on substantive due process, Perdock has not provided any persuasive

3    authority that imposes the same requirement to Dinius's *Devereaux* claim.[12]  Rather, courts have

4    found that individuals may recover under Section 1983 if their due process rights were violated

5    based on the fabrication of evidence by a government officer acting in an investigative capacity.

6    *See, e.g.*, *Devereaux*, 263 F.3d at 1070 ("we are persuaded that there is a clearly established

7    constitutional due process right not to be subjected to criminal charges on the basis of false evidence

8    that was deliberately fabricated by the government"); *Lacy v. Cnty. of Maricopa*, 631 F.Supp.2d

9    1197, 1206-09 (D. Arizona 2008) (finding that the plaintiff's Section 1983 claim withstands

10   summary judgment because there was a triable issue as to whether the defendant recklessly

11   fabricated evidence).  Thus, Perdock's motion to dismiss Dinius's *Devereaux* claim is DENIED.

12          3.  Section 1983 *Youngblood* Claim

13          As explained in section III(A)(5) of this order, Dinius cannot state a *Youngblood* claim under

14   Section 1983 because there was no failure to preserve evidence since a breathalyzer test was never

15   administered.  Dinius's *Youngblood* claim against Perdock is therefore DISMISSED WITH

16   PREJUDICE.

17          4.  Section 1983 Malicious Prosecution Claim

18          In *Awabdy*, the Ninth Circuit explained that a Section 1983 malicious prosecution requires a

19   plaintiff to establish that "the defendants prosecuted him with malice and without probable cause,

20   and that they did so for the purpose of denying him equal protection or *another specific*

21   *constitutional right*."  368 F.3d at 1066 (citations omitted and emphasis added).  Pursuant to this,

22

23          [12]  Perdock cites *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir.

24   2002), to support his position.  In *Galbraith*, the plaintiff brought a Section 1983 action — under the
     Fourth, Fifth, and Fourteenth Amendments — against the county, the county coroner, and police

25   officers for falsifying an autopsy report which led to his false arrest and prosecution.  *Id* at 1121-22.
     The Ninth Circuit agreed with the district court and held that the Fourth Amendment's prohibition

26   against pretrial deprivations governed the plaintiff's case rather than the Fourteenth Amendment.  *Id.*

27   at 1127.  This ruling, however, does not apply here because Dinius is not alleging a false arrest claim
     under the Fourth Amendment; rather his claim stems from Defendants fabricating evidence to

28   violate his other constitutional rights.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Dinius alleges in his fourth claim that each of the Defendants violated his substantive due process

2  rights to be free from criminal charges brought in bad faith and without probable cause.  SAC ¶ 44.

3  Perdock, however, argues that a Section 1983 malicious prosecution claim cannot stem from the

4  violation of substantive due process rights.  This is correct.  In analyzing the United States Supreme

5  Court decision in *Albright v. Oliver*, 510 U.S. 266 (1994), *Awabdy* held that although Section 1983

6  malicious prosecution claims can be based on constitutional violations outside of the Fourth

7  Amendment, they cannot be based on a violation of the substantive due process clause:

8          The principle that *Albright* establishes is that no substantive due process right exists
           under the Fourteenth Amendment to be free from prosecution without probable cause.
9          In rejecting *Albright's* reliance on substantive due process as the basis for his
           malicious prosecution claim, the plurality explained: "Where a particular Amendment
10         'provides an explicit textual source of constitutional protection' against a particular
           sort of government behavior, 'that Amendment', not the more generalized notion of
11         'substantive due process,' must be the guide for analyzing these claims."  In *Albright*,
           the plurality suggested that the plaintiff in that case might have set forth a proper §
12         1983 claim had he argued that the state's pretrial deprivations of his personal liberty
           violated the Fourth Amendment.

13

14  368 F.3d at 1069 (internal citations omitted).  This view has been reaffirmed by several district

15  courts.  In *Hill v. Clovis Police Department*, the Court dismissed the plaintiff's Section 1983

16  malicious prosecution claim — which, just like Dinius's SAC, did not include a Fourth Amendment

17  claim — finding that while the claim may be based on a constitutional right outside of the Fourth

18  Amendment, "there is no Fourteenth Amendment substantive due process right to be free from

19  prosecution without probable cause."  2011 WL 5828224, at *2-4 (E.D. Cal. Nov. 18, 2011) (further

20  explaining that if the plaintiff "is attempting to rely on substantive due process, then his reliance is

21  misplaced because there is no substantive due process right to be free from malicious prosecution");

22  *see also Bulfer v. Dobbins*, 2011 WL 530039, at *12 (S.D. Cal. Feb. 7, 2011) (holding that even if

23  the defendants fabricated evidence against the plaintiff, "that fact alone would not suffice to make

24  out a malicious prosecution claim under § 1983" because *Awabdy* does not permit such claims to be

25  based on the substantive due process clause).  Dinius concedes that his Section 1983 malicious

26  prosecution claim is based entirely on his substantive due process rights and does not offer any

27  persuasive arguments to distinguish the above cases.  *See, e.g.*, Dkt. No. 69 at 18 ("Plaintiff does not

28

claim that *his § 1983 Fourteenth Amendment substantive due process claim* rises from lack of probable cause alone.") (emphasis added); Dkt. No. 70 at 9 ("Rather, Dinius' § Fourth (and in part his Fifth) Cause of Action *is founded on the Fourteenth Amendment substantive due process right* embracing allegations and proof of three essential elements . . . .") (emphasis added).  The Court follows the decisions cited above and finds that Dinius's Section 1983 malicious prosecution claim, based on substantive due process rights, is not actionable.  It is therefore DISMISSED.[13]

### 5.  Section 1983 Conspiracy Claim

In his fifth claim, Dinius asserts a Section 1983 claim based on a conspiracy to violate his constitutional rights between each individual Defendant as well as another conspiracy between Lake County and Charles Slabaugh (a Sergeant from the Sacramento County Sheriff's Department who conducted an investigation of the accident).  The Ninth Circuit outlined the elements of a conspiracy claim in *Crowe v. County of San Diego* as follows:

> To establish liability for a conspiracy in a § 1983 case, a plaintiff must "demonstrate the existence of an agreement or meeting of the minds" to violate constitutional rights.  *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999) (internal quotation marks omitted).  "Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants."  *Id.*  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865

---

[13]  As explained in the Court's previous orders with respect to Defendants' motions to dismiss, the law on Section 1983 malicious prosecution claims is complex and there does appear to be a disconnect in some cases from this Circuit where it is not clear whether the holding of the case applies to all Section 1983 claims or only Section 1983 malicious prosecution claims.  This Court interprets the Ninth Circuit to permit Section 1983 claims when a defendant acting under color of state law commits conduct that deprives a plaintiff of a constitutional right.  *See Leer*, 844 F.2d at 632-33 (9th Cir. 1988).  Section 1983 malicious prosecution claims, however, have a stricter standard.  One of the reasons is because a malicious prosecution claim is usually not cognizable under Section 1983, unless one important exception applies: "malicious prosecution constitutes a deprivation of liberty without due process of law — and is a federal constitutional tort — when it is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights."  *Veth Mam v. City of Fullerton*, 2012 WL 443840, at *2 (C.D. Cal. Feb. 13, 2002).  And, in interpreting this stricter standard, the Ninth Circuit held in *Awabdy* that a Section 1983 malicious prosecution claim cannot be based on the substantive due process clause.  368 F.3d at 1069.

1    F.2d 1539, 1541 (9th Cir. 1989) (en banc).

2    608 F.3d 406, 440 (9th Cir. 2010).  Accordingly, without a deprivation of a constitutional right,

3    conspiracy allegations do not give rise to a Section 1983 conspiracy claim.  *See Dooley v. Reiss*, 736

4    F.2d 1392, 1395 (9th Cir. 1984) ("The absence of an actual deprivation implies that plaintiffs also

5    failed to state a section 1983 claim based on the alleged conspiracy to conceal the reports."); *Cefalu*

6    *v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000) (finding that because the plaintiffs did not

7    suffer a constitutional injury, this foreclosed any potential relief they could obtain on their

8    conspiracy claim).

9         Dinius's only remaining Section 1983 claim is based on the violation of his *Devereaux*

10   rights.  Perdock argues that Dinius has not sufficiently pled a conspiracy amongst him and the other

11   Defendants to violate these rights.  The Court disagrees since the sum of Dinius's allegations

12   adequately plead that Perdock, Slabaugh, Ostini, and Hopkins reached an agreement to fabricate

13   evidence so that Perdock would not be liable for his involvement in the accident and that blame

14   would be shifted to Dinius.  *See, e.g.,* SAC ¶¶ 37 and 49.  Perdock's motion on this ground is

15   therefore DENIED.

16        6.  <u>IIED Claim</u>

17        Perdock next challenges Dinius's IIED claim.  Perdock argues that he cannot be liable for

18   this tort because his alleged wrongful conduct was not directed specifically at Dinius.  According to

19   Perdock, the SAC only alleges that he made false statements to the government for his own self-

20   preservation and not to cause any injury to Dinius.  This argument lacks merit.  Dinius's SAC, read

21   in a light most favorable to him, alleges that Perdock was attempting to both escape liability from

22   the accident as well as pushing for Dinius to be culpable.  *See, e.g.*, SAC ¶ 33 ("Perdock used his

23   position and influence as LCSO Chief Deputy to cause, urge, encourage, incite, and/or instigate the

24   foregoing failures to document material exculpatory evidence and/or the foregoing nondisclosures of

25   material exculpatory evidence").  Accordingly, Perdock's motion to dismiss the IIED claim is

26

27

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

DENIED.[14]

7.  <u>State Law Malicious Prosecution Claim</u>

In his seventh claim, Dinius asserts that Perdock and Slabaugh are liable for malicious prosecution under California law.  This tort requires a plaintiff to show (1) that the prior action was commenced by or at the defendant's direction and was terminated in the plaintiff's favor; (2) the action was brought without probable cause; and (3) the action was initiated with malice.  *Pattiz v. Minye*, 61 Cal.App.4th 822, 826 (1998).  Perdock first argues that the decision of a judge or magistrate to hold a criminal defendant to answer after a preliminary hearing is prima facie evidence of probable cause.  Dkt. No. 68-1 at 22 (citing *Awabdy*, 368 F.3d at 1067).  But, as *Awabdy* pointed out, a plaintiff may rebut this prima facie finding of probable cause "by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith."  *Id.*  Dinius has alleged just that: his prosecution was based on Perdock fabricating evidence as well as other wrongful conduct.  Perdock then argues that he cannot be liable for malicious prosecution because he was not "actively instrumental in causing the initiation of legal proceedings."  Dkt. No. 68-1 at 23.  However, "[m]alicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed."  *Awabdy*, 368 F.3d at 1066.  In the SAC, Dinius sufficiently pleads that Perdock maliciously lied about his speed, sobriety, and the navigation lights so that Dinius would be charged in connection with the accident and that Perdock would escape liability.  This is actionable and Perdock's motion to dismiss Dinius's common law malicious prosecution claim is DENIED.

**D. Slabaugh's Motion to Dismiss**

Slabaugh also moves to dismiss each of Dinius's claims against him.[15]  The Court first

---

[14]  Perdock's argument that Dinius's IIED claim fails because it is based on the same facts as his other claims does not warrant discussion since the Court has not dismissed Dinius's *Devereaux* claim.

[15]  Dinius has not alleged a *Youngblood* claim against Slabaugh.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  summarily rejects the qualified immunity defense raised by Slabaugh with respect to Dinius's

2  Section 1983 claims, which are discussed, along with his other claims, in detail below.  The doctrine

3  of qualified immunity shields government officials performing discretionary functions from Section

4  1983 liability when "their conduct does not violate clearly established statutory or constitutional

5  rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818

6  (1982); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("As the qualified immunity defense has

7  evolved, it provides ample protection to all but the plainly incompetent or those who knowingly

8  violate the law.").  Slabaugh contends that he is entitled to qualified immunity because the SAC

9  does not contain any factual allegations to support that he knowingly violated the law or was plainly

10 incompetent.  But this is incorrect.  In the SAC, Dinius pleads numerous allegations supporting that

11 Slabaugh was incompetent in investigating and recommending two felony charges against him.  *See,*

12 *e.g.*, SAC  ¶¶ 29, 37, 45, and 49.  At this stage of the proceedings — where the Court must accept all

13 of Dinius's allegations as true and interpret them in a light most favorable to him — Slabaugh's

14 qualified immunity defense is improperly raised.  *See Grose v. Caruso,* 284 Fed.Appx. 279, 283 (6th

15 Cir. 2008) ("Dismissals on the basis of qualified immunity are generally made pursuant [to Rule] 56

16 summary judgment motions, not 12(b)(6) sufficiency of pleadings motions.").[16]

17          1.  Section 1983 *Brady* Claim

18          As explained in section III(A)(3) of this order, Dinius cannot state a *Brady* claim under

19 Section 1983 because he was never convicted in the underlying criminal matter.  Slabaugh's motion

20 to dismiss this claim is therefore GRANTED.

21          2.  Section 1983 *Devereaux* Claim

22          The Court explained in section III(A)(4) of this order that a *Devereaux* claim requires Dinius

23 to allege that Slabaugh either continued his investigation even though he knew Dinius was innocent

24 *or* that he used coercive and abusive techniques that he knew or should have known would result in

25

26          [16]  Pursuant to Federal Rules of Appellate Procedure 28(f) and 32.1, unpublished opinions

27 issued after January 1, 2007 may be cited.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

false information.  As part of his argument that Dinius has not alleged any facts to support this claim, Slabaugh assumes that Dinius is not contending that he used coercive or abusive investigative techniques.  Dkt No. 71 at 2 ("Plaintiff does not allege that Slabaugh used coercive or abusive techniques.").  But this is not the case.  The SAC asserts that Slabaugh had no experience in the operation of sailboats, only spent two days on the investigation, did not interview important witnesses (including the owner of the sailboat who would have confirmed that the navigation lights were on at the time of the accident), mischaracterized the testimony from an onshore witness to reflect that the navigation lights were not lit when the witness instead reported that he did not see the sailboat, and turned a blind-eye towards Perdock as a suspect, particularly ignoring that he may have been intoxicated and traveling at nearly 60 miles per hour when his powerboat collided with the sailboat.  SAC  ¶¶ 2, 29, and 37.  Slabaugh, who the LCSO relied on to provide an independent investigation of the accident, recommended that Dinius should be charged with manslaughter.[17] SAC  ¶ 29.  These claims sufficiently allege that Slabaugh should have known that his less than thorough investigation may lead to false information.[18]  Slabaugh's argument to the contrary is misplaced since — similar to the County Defendants and Perdock's motion — it goes to the merits of the claim.  The motion to dismiss the *Devereaux* claim is therefore DENIED.

   3. Section 1983 Malicious Prosecution Claim

   The Court explained in section III(C)(4) of this order that Dinius's Section 1983 malicious prosecution claim is not actionable because it is based on a violation of his substantive due process

---

[17]  One of the arguments raised by Slabaugh is that he had probable cause to recommend Dinius's prosecution for boating under the influence.  Dinius's Section 1983 claims, however, are not based on the fact that he was charged with this misdemeanor.  Rather, his claims stem from the fact that he was initially prosecuted for the felony of manslaughter.

[18]  The Court notes that Dinius's claim under the first prong of *Devereaux* appears to be misplaced because even if Slabaugh knew that Dinius was innocent, he would still have been required to continue the investigation since the LCSO specifically asked him to provide an independent report regarding the accident.  Nonetheless, the Court does not consider this because Dinius has adequately pled that Slabaugh used coercive and abusive investigative techniques, which satisfies the second prong of *Devereaux* and makes his claim actionable.

23

UNITED STATES DISTRICT COURT
For the Northern District of California

1    rights.  Slabaugh's motion to dismiss this claim is consequently GRANTED.

2        4.  Section 1983 Conspiracy Claim

3        As explained earlier, Dinius's Section 1983 conspiracy claim is based on a conspiracy

4    between each individual Defendant as well as a second conspiracy between Lake County and

5    Slabaugh to violate his constitutional rights.  Because the Court has dismissed each of Dinius's

6    Section 1983 claims besides the *Devereaux* claim (which was not alleged against Lake County)

7    Dinius cannot recover for the second conspiracy allegations involving the County.  *See Dooley*, 736

8    F.2d at 1395 ("The absence of an actual deprivation implies that plaintiffs also failed to state a

9    section 1983 claim based on the alleged conspiracy to conceal the reports.").  With respect to the

10   global conspiracy, Slabaugh argues that the SAC's allegations do not adequately plead a conspiracy

11   claim against him.  For the same reasons the Court found that these conspiracy claims were

12   sufficient against Perdock, they are also sufficient here and Slabaugh's motion to dismiss this

13   Section 1983 claim is DENIED.

14       5.  State Law Claims

15       Slabaugh next attacks Dinius's state law claims on several grounds.  He first argues that he

16   has immunity against these claims pursuant to California Government Code § 821.6, or, in the

17   alternative, California Government Code § 820.2.[19]  These immunities, however, are only available

18   to public employees who are alleged to have acted within the scope of their employment.  This is not

19   the case here since Dinius pleads that Slabaugh's conduct, similar to the other Defendants, was

20   based on "[c]orrupt personal motives, rather than the pursuit of justice or legitimate activity within

21   the scope of their employment . . . ."  SAC ¶ 1.[20]  There is also a question whether Slabaugh was

23       [19]  Section 820.2 provides that "a public employee is not liable for an injury resulting from

24   his act or omission where the act or omission was the result of the exercise of the discretion vested
     in him, whether or not such discretion be abused."

25       [20]  Some of the motions to dismiss argue that Dinius has conceded that Defendants' conduct

26   was within the course and scope of their employment.  *See* Dkt. No. 76 at 23:2.  This argument is not
     well taken since it appears that Dinius simply made a grammatical error in his brief, a view that

27   is corroborated by the very next parenthetical that cites to Dinius's allegation from the SAC — which
     is controlling here — that the County Defendants *were not* acting within the scope of their

28

1   acting within the scope of his employment since his alleged wrongful conduct was committed at a

2   time when he was a member of the Sacramento County Sheriff's Department and allegedly only

3   investigating the accident on a volunteer basis pursuant to the LCSO's request.  SAC ¶ 11.

4        Slabaugh also argues that he is immune against any state law claims due to Civil Code §

5   47(b).  This statute, commonly referred to as the litigation privilege, has been broadly defined to

6   provide immunity for "any publication required or permitted by law in the course of a judicial

7   proceeding to achieve the objects of the litigation, even though the publication is made outside the

8   courtroom and no function of the court or its officers is involved."  *Silberg v. Anderson*, 50 Cal.3d

9   205, 212 (1990).  This privilege, however, does not apply here because some of Slabaugh's

10  wrongful conduct was not based on any publication, such as Dinius's *Devereaux* claim which

11  accuses Slabaugh of using coercive or abusive investigation techniques that led to false information.

12  Accordingly, Slabaugh's motion to dismiss is DENIED with respect to this claim.

### IV.   CONCLUSION

14       In accordance with the Court's rulings above, the Defendants' motions to dismiss are

15  GRANTED IN PART and DENIED IN PART and Hopkins's anti-SLAPP motion is DENIED.

16  With respect to Dinius's pending claims, the Court shall conduct a case management conference on

17  July 5, 2012 at 10:00 a.m. in Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco,

18  California.  The parties shall file a joint case management statement no later than June 28, 2012.

19       **IT IS SO ORDERED.**

21  Dated: May 24, 2012

22                                                Maria-Elena James
                                              Chief United States Magistrate Judge

27  _____

28  employment.  *Id.* at 23.

25